UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DONNA LAIRD

      Plaintiff,

     v.

LARRY SPENCER, in his official capacity
as a Justice of the Peace for East Baton
Rouge Parish, Louisiana

and

THE STATE OF LOUISIANA

      Defendants.

**COMPLAINT**

**Civ. No. 19-299**

-1-

**INTRODUCTION**

1.       Donna Laird, a Hard of Hearing individual, ("Plaintiff") brings this Complaint against Larry Spencer, in his official capacity as the Justice of the Peace for Ward 3, District 3 of the Parish of East Baton Rouge, Louisiana, and the State of Louisiana (collectively "Defendants") on the basis that Defendants failed and/or refused to provide auxiliary aids and services necessary to ensure that Plaintiff would have effective access to aural communications in the course of proceedings in Justice Spencer's court, to which Plaintiff was a party as a defendant. In her Answer prior to eviction proceedings before Justice Spencer, Plaintiff requested that his court provide a CART machine or an oral interpreter due to her disability. In a letter addressed to Plaintiff, Justice Spencer explicitly refused to provide either of Plaintiff's requested accommodations on the basis that any auxiliary aid "must be provided by [Plaintiff]". Justice Spencer made no further effort to collaborate with Plaintiff to accommodate her disability. Plaintiff attended the hearing as scheduled on August 14, 2018 and Justice Spencer provided no auxiliary aid that would afford effective access to communication for her. Instead, despite her verbal objection, Plaintiff was forced to get through the hearing with only scribbled notes on a notepad as a nominal and inadequate gesture towards an accommodation. As Plaintiff anticipated, Plaintiff did not have access to a significant proportion of the spoken communications made during the hearing, particularly between Justice Spencer and the opposing party. The Defendants' refusal to

provide an accommodation violates Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*; Section 504 of the Rehabilitation Act "RA"), 29 U.S.C. §794; and the Louisiana Interpreter's Law, LA R.S. §46:2361 *et seq.*

2.   Based on Plaintiff's allegations herein, it is evident that Defendants have failed to implement appropriate policies and training regarding the civil rights and communication needs of deaf individuals in accordance with law.

3.   Plaintiff brings this lawsuit to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' services, programs, or activities. Plaintiff seeks declaratory and equitable relief, injunctive relief, compensatory damages, attorney's fees, litigation expenses, and court costs to redress Defendants' unlawful discrimination on the basis of disability in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131 *et seq.*; Section 504 of the Rehabilitation Act "RA"), 29 U.S.C. §794; the Louisiana Interpreter's Law, LA R.S. §46:2361 *et seq*; and any other available state law causes of action.

**THE PARTIES**

4.   Plaintiff DONNA LAIRD brings this action and is an individual residing in East Baton Rouge Parish, Louisiana. Plaintiff is a Hard of Hearing individual, and she is an individual with a disability within the meaning of federal and state antidiscrimination

laws.

5.    Defendant LARRY SPENCER is a Justice of the Peace for Ward 3, District 3 of the Parish of East Baton Rouge. Defendant is a public entity within the meaning of Title II of the ADA and is subject to the requirements of that Title. Defendant receives federal financial assistance by virtue of being an official of the State of Louisiana and is subject to the requirements of Section 504 of the RA. Defendant also is subject to the requirements of the Louisiana Interpreter's Law as a presiding officer over Louisiana judicial proceedings.

6.    Defendant STATE OF LOUISIANA is responsible for the creation and administration of judicial offices and their activities in the State of Louisiana via state constitution and state statute. Furthermore, under Louisiana jurisprudence by virtue of the office's creation by either the state constitution or state statute, the Office of Justice of the Peace is considered a "state office" and unobjectionably considered an instrumentality of state government. Defendant is a public entity within the meaning of Title II of the ADA and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, and therefore is subject to the requirements of Title II of the ADA and Section 504 of the RA. Additionally, as the Office of the Justice of the Peace is a state office, Defendant is responsible for Justice Spencer's compliance with the Louisiana Interpreter's Law.

## JURISDICTION & VENUE

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law.

8.     This Court has supplemental jurisdiction over Plaintiff's claims in this action arising under state law pursuant to 28 U.S.C. §1367 because they are so related to Plaintiff's claims arising under federal law over which this Court has original jurisdiction that they form the same case or controversy under Article III of the United States Constitution.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendants reside within the jurisdiction of this District, and/or a substantial part of the events that give rise to the claims occurred in this District, and/or the Defendants have sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced.

## STATEMENT OF FACTS

10.     Plaintiff Donna Laird (hereinafter "Plaintiff") is a hard of hearing individual.

11.     Plaintiff is substantially limited in the major life activities of hearing, communicating, and working.

12.     Due to her disability, Plaintiff often requires auxiliary aids and services to ensure effective communication, particularly in open group settings such as judicial proceedings.

13.     On or about August 7, 2018, Plaintiff received a citation for an eviction

proceeding instituted by her landlord. The eviction proceeding was assigned to be held Tuesday, August 14, 2018 at 10:00 AM.

14.    On or about August 7, 2018, Plaintiff filed a written answer with Justice Larry Spencer (hereinafter "Justice Spencer"). In her answer, Plaintiff requested the provision of either one of two auxiliary aids to facilitate effective communication during the upcoming eviction proceeding: CART captioning services or an oral interpreter.

15.    CART (Communication Access Real-time Translation) references a system that court reporters and closed captioners use to convert speech to text. Generally, a trained operator uses computer software and/or stenography methods to transcribe spoken speech into text, word for word. This text is displayed on the operator's computer screen in real-time for the client to read. An oral interpreter is an individual who facilitates communication between Deaf and/or Hard of Hearing individuals who have residual hearing but benefit from lip-reading to receive aural information. An oral interpreter remains in close proximity to the client, in a location best suited to the client, and inaudibly repeats all oral communication to the client.

16.    On or about August 7, 2018, Justice Spencer wrote and mailed a letter to Plaintiff via U.S. Mail. Within this letter, Justice Spencer denied Plaintiff's request for his court's provision of CART services, stating "as for the CART machine, if this is needed, this must be provided by the defendant." Justice Spencer also implicitly denied Plaintiff's request for an oral interpreter by failing to address it entirely. Justice Spencer

placed all responsibility, logistically and financially, for the provision of auxiliary aids on Plaintiff.

17.    On or about August 14, 2018, Plaintiff's eviction proceeding was held in Justice Spencer's court. When Plaintiff arrived, as she expected, it became apparent that neither of her requested auxiliary aids would be provided to her for the eviction proceeding. When the hearing began, Plaintiff verbally objected to the fact that her requested auxiliary aids had not been provided. Justice Spencer indicated that he would write notes on a legal pad for Plaintiff's benefit. When Plaintiff expressed her objection to this arrangement, Justice Spencer laughed and stated that Plaintiff could hear him. As the hearing proceeded, there was a great deal of verbal communication that was made with no attempt whatsoever to write notes on the aforementioned legal pad for Plaintiff's benefit. When Justice Spencer did write notes, it was at his discretion and judgment alone. Compounding her difficulty, Plaintiff's landlord was situated to her right, which is the ear where she has her most significant hearing loss. Even though some notes at times were written on the notepad for Plaintiff to view, she failed to hear and understand a significant portion of the oral communications that were made during the hearing, which impaired her ability to effectively and fully participate in the proceeding. Writing notes does not constitute an appropriate auxiliary aid for Plaintiff that would afford her effective communication in this context.

18.    Due to Justice Spencer's refusal to provide effective auxiliary aids that

would ensure that communications between Plaintiff, Justice Spencer, and other participants in the eviction proceeding were as effective as for all others, Plaintiff was denied the opportunity to fully and effectively participate in this critical proceeding because she could not access all of the aural content of the hearing. Furthermore, her inability to fully participate and represent herself rendered her unable to enjoy the benefits and protections of a judicial hearing.

19.    Ultimately, Justice Spencer rendered judgment for Plaintiff's landlord, which resulted in Plaintiff's eviction.

20.    Upon information and belief, Defendants were aware of Plaintiff's obvious disability.

21.    Defendants failed to undertake any meaningful assessment of Plaintiff's communication needs and abilities.

22.    Defendants did not give primary consideration to Plaintiff's expressed preferences for auxiliary aids or otherwise take them into account and made no attempt otherwise to collaborate with Plaintiff to furnish appropriate auxiliary aids that would afford her access to effective communication during the proceedings.

23.    Defendants placed all responsibility for the provision of any auxiliary aids on Plaintiff.

24.    Defendants forced Plaintiff to rely entirely on her deficient hearing and communicate during the proceedings solely through direct spoken communication and

periodic written notes, neither of which provide effective communication access for Plaintiff in the complex context of a judicial proceeding.

25.    Due to Defendants' failure to ensure effective communication for Plaintiff, her ability to participate in the proceedings of Justice Spencer's court and to enjoy the benefits of a judicial proceeding was objectively substandard and inferior to those who are hearing. As a result, Plaintiff was subjected to discriminatory treatment because of her disability.

26.    Defendants intentionally discriminated against Plaintiff with deliberate indifference to her rights and to her communication needs, causing Plaintiff injury in enduring frustration, humiliation, fear, anxiety, and emotional distress.

27.    Plaintiff, as a resident of East Baton Rouge Parish, may foreseeably have to appear before Justice Spencer in the future and this possibility generates significant fear and distress for Plaintiff due to the discrimination she faced and expects to face in the future if she has to return to Justice Spencer's court.

## CLAIM 1: VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

28.    Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

29.    At all times relevant to this action, Title II of the ADA, 42 U.S.C. § 12131, *et seq.* has been in full force and effect and has applied to Defendants' conduct.

30.    At all times relevant to this action, the United States Department of Justice

regulations implementing Title II of the ADA, 28 C.F.R. Part 35, have been in full force and effect and have applied to the Defendants' conduct.

31.    Defendants are a State government or a department, agency, special purpose district, or other instrumentality of a State. Therefore, both Defendants are public entities within the meaning and coverage of Title II of the ADA, 42 U.S.C. § 12131(1).

32.    At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of hearing, communicating, and working, and is a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. § 12131(1) and 28 C.F.R. 35.108.

33.    Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

34.    Federal regulations implementing Title II of the ADA provide that a public entity may not, on the basis of disability, "afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others." 28 C.F.R. § 35.130(b)(1)(ii). Furthermore, a public entity may not "provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. §

35.130(b)(1)(iii).

35.    Federal regulations implementing Title II of the ADA also provide that a public entity "may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part." 28 C.F.R. § 35.130(f).

36.    Federal regulations implementing Title II of the ADA further provide that a public entity "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

37.    Federal regulations implementing Title II of the ADA provide that a public entity "A public entity shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1).

38.    28 C.F.R. § 35.160(b)(2) states that the "type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the

communication involved; and the context in which the communication is taking place. In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability."

39.   Defendants had an affirmative responsibility to ensure that Plaintiff had an equal opportunity to participate in or benefit from the proceedings in Justice Spencer's courtroom on the same basis as the non-disabled public would have. This entails having access to all communications during the proceedings that is as effective as communications with any other individual.

40.   In order to provide Plaintiff with an equal opportunity to participate in the proceedings, Defendants had an affirmative responsibility to provide Plaintiff with auxiliary aids, particularly in the highly complex and significant context of a judicial proceeding to determine whether Plaintiff should be evicted from her home. Defendants also had a responsibility to give primary consideration to Plaintiff's expressed preferences for the provision of an auxiliary aid in the form of CART services or an oral interpreter. Defendants further had a responsibility to provide Plaintiff with her requested auxiliary aid in a timely manner and to refrain from providing an alternate auxiliary aid, such as written notes on a notepad, that is not as effective in affording Plaintiff an equal

opportunity to participate in the proceedings. Defendants failed entirely to comply with these obligations.

41.    Furthermore, Defendants were prohibited from either requiring Plaintiff to provide auxiliary aids herself or imposing a surcharge to cover the costs of the provision of auxiliary aids required to provide Plaintiff with the nondiscriminatory treatment that she is entitled to under the ADA.

42.    As such, Defendants discriminated against Plaintiff, on the basis of disability, in violation of Title III of the ADA and its implementing regulations, by failing to provide Plaintiff with access to effective communication so that Plaintiff may have an equal opportunity to access Defendants' services, programs, or activities, by failing to provide either one of Plaintiff's requested auxiliary aids, by failing to give primary consideration to Plaintiff's expressed preferences for auxiliary aids, and by placing the responsibility for such provision onto Plaintiff.

43.    Additionally, as set forth above, absent injunctive relief, there is a clear risk that Defendants' actions will recur with Plaintiff and/or additional deaf patients or companions.

44.    Plaintiff is therefore entitled to declaratory and injunctive relief as well as an award of attorneys' fees, costs, expenses, and compensatory damages pursuant to the ADA, 42 U.S.C. § 12133.

### CLAIM 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

45.    Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

46.    At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendants' conduct.

47.    At all times relevant to this action, the United States Department of Justice ("DOJ") regulations implementing Section 504 of the Rehabilitation Act, 28 C.F.R. Part 42, have been in full force and effect and have applied to Defendants' conduct.

48.    At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing, communicating, and working and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9). At all times relevant to this action, the State of Louisiana received federal financial assistance. Additionally, as an instrumentality of the State of Louisiana, The Office of Justice of the Peace is a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

49.    Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

50.    Pursuant to Federal regulations implementing Section 504 of the Rehabilitation Act, programs or activities receiving Federal financial assistance may not

"deny a qualified individual with a disability the opportunity accorded others to participate in, or benefit from, the aid, benefit, or service." 28 C.F.R. § 42.510(b)(i).

51.    Pursuant to Federal regulations implementing Section 504 of the Rehabilitation Act, programs or activities receiving Federal financial assistance may not "afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others." 28 C.F.R. § 42.510(b)(ii).

52.    Pursuant to Federal regulations implementing Section 504 of the Rehabilitation Act, programs or activities receiving Federal financial assistance may not "provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 42.510(b)(iii).

53.    Federal regulations implementing Section 504 of the Rehabilitation Act state that "a recipient may not place a surcharge on a particular individual with a disability or any class of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, reasonable accommodations, or program accessibility, that are required to provide that individual or class with the nondiscriminatory treatment required by the Act or this subpart." 28 C.F.R. § 42.510(h).

54.    Federal regulations implementing Section 504 of the Rehabilitation Act

provide that "a recipient shall take appropriate steps to ensure that communications with applicants, participants, beneficiaries, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 42.511(a).

55.    Federal regulations implementing Section 504 of the Rehabilitation Act provide that "a recipient shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, including applicants, participants, beneficiaries, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity, of a recipient." 28 C.F.R. § 42.511(b)(1).

56.    Lastly, the "type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. In determining what types of auxiliary aids and services are necessary, a recipient entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 42.511(b)(2).

57.    The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

58. Defendants discriminated against Plaintiff, on the basis of disability, in violation of 29 U.S.C. § 794, by failing to provide Plaintiff with access to effective communication so that Plaintiff may have an equal opportunity to access Defendants' services, programs, or activities, by failing to provide either one of Plaintiff's requested auxiliary aids, by failing to give primary consideration to Plaintiff's expressed preferences for auxiliary aids, and by placing the responsibility for such provision onto Plaintiff.

59. Considering the foregoing allegations, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiff and/or other deaf patients or companions.

60. Plaintiff is entitled to declaratory and injunctive relief, as well as an award of attorneys' fees, costs, and disbursements, and compensatory damages for the injuries and loss she sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a).

## **CLAIM 3: VIOLATIONS OF THE LOUISIANA INTERPRETER'S LAW**

61. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

62. At all times relevant to this action, the Louisiana Interpreter's Law, LA R.S. § 46:2361 et. seq., has been in full force and effect and has applied to Defendants'

conduct.

63.    At all times relevant to this action, Plaintiff has been a person, who because of hearing loss, has difficulty understanding communications and is deaf or hard of hearing within the meaning of LA R.S. § 46:2362(4).

64.    An "interpreter/transliterator" is defined as a "facilitator of communication among persons with hearing and persons who are deaf or hard of hearing". LA R.S. § 46:2362(3).

65.    The Louisiana Interpreter's Law requires that a presiding officer of any judicial proceeding in the State of Louisiana "shall appoint and pay for a qualified interpreter/transliterator to interpret or transliterate the proceedings to [a] person who is deaf or hard of hearing" who is a party or witness. LA R.S. § 46:2364(A).

66.    Plaintiff expressly requested that Justice Spencer provide and pay for either an oral interpreter or CART services, both of which utilize persons trained to facilitate communication between the hearing and the deaf or hard of hearing.

67.    Justice Spencer affirmatively refused to comply with Plaintiff's request for auxiliary aids. Furthermore, he placed the logistical and financial burden of obtaining auxiliary aids onto Plaintiff.

68.    As a result, Defendants failed to comply with the plain requirement of the Louisiana Interpreter's Law in violation of LA R.S. § 46:2364(A) and failed to fulfill an implied duty to Plaintiff created by this statute.

69.    Plaintiff is therefore seeks to recover compensatory damages for the injuries she sustained as a result of Defendants' conduct and deliberate indifference to her rights under the Louisiana Interpreter's Law as hereinbefore alleged.

70.    Plaintiff also seeks injunctive relief enjoining similar future conduct in violation of the Louisiana Interpreter's Law as well as an award of attorneys' fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief:

a.    Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the policies, procedures, and practices of Defendants have subjected Plaintiff to unlawful discrimination in violation of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Louisiana Interpreter's Law;

b.    Issue an injunction forbidding Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals, or their companions, meaningful access to and full and equal enjoyment of Defendants' facilities, services, or programs;

c.    Issue an injunction ordering Defendants:

i.   to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals by failing to provide effective communication;

ii.  to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an auxiliary aid, one will be provided as soon as practicable for all services, programs, or activities offered by Defendants, with priority given to the deaf or hard of hearing individual's preference;

iii. to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendants will provide any necessary auxiliary aid to ensure effective communication with deaf or hard of hearing persons;

iv.  to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances, recognizing that auxiliary aids are not one-size-fit-all for all deaf and hard of hearing individuals;

v.  to train all their agents, employees, and staff on a regular basis about the

rights of individuals who are deaf or hard of hearing under the ADA, the

RA, and the Louisiana Interpreter's Law;

d. Award to Plaintiff:

i. Compensatory damages pursuant to the ADA, RA, and the Louisiana

Interpreter's Law;

ii. Reasonable costs and attorneys' fees pursuant to the ADA, the RA, the

ACA, and the Louisiana Interpreter's Law;

iii. Interest on all amounts at the highest rates and from the earliest dates

allowed by law;

iv. Any and all other relief that this Court finds necessary and appropriate.

Dated: May 10, 2019

Respectfully Submitted,

John G. Veazey (LA #36291)
JOHN VEAZEY LAW, LLC
16573 Airline Highway, Suite A
Prairieville, LA 70769
225-955-3121 (tel)
jveazey@johnveazeylaw.com