**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| DONNA LAIRD | NO. 19-299-SDD-RLB |
| V. | JUDGE SHELLY D. DICK |
| LARRY SPENCER, *et al.* | MAG. JUDGE RICHARD L. BOURGEOIS, JR. |

**RULING**

This matter is before the Court on the *Motion to Dismiss*[1] by Defendant, Larry Spencer, solely in his official capacity as Justice of the Peace, District Three, Ward Three, East Baton Rouge Parish ("Defendant" or "Justice of the Peace Spencer"). Plaintiff, Donna Laird ("Plaintiff"), has filed an *Opposition*.[2] Oral argument is not necessary. For the following reasons, the Court finds that Defendant's motion should be granted.

**I.    FACTUAL BACKGROUND**

Plaintiff is a "hard of hearing" individual.[3] She received a citation for an eviction proceeding on August 7, 2018.[4] The eviction proceeding was noticed to take place on August 14, 2018.[5] In response to the citation, Plaintiff "filed a written answer" on August 7, 2018, with Justice of the Peace Spencer, requesting "the provision of either one of two auxiliary aids to facilitate effective communication during the upcoming eviction

---

[1] Rec. Doc. No. 7.
[2] Rec. Doc. No. 9.
[3] Rec. Doc. No. 1, p. 5.
[4] Rec. Doc. No. 1, pp. 5-6.
[5] Rec. Doc. No. 1, p. 6.
59107

proceeding: CART [Communication Access Real-Time Translation] captioning services or an oral interpreter."[6] On the same day, "Justice Spencer wrote and mailed a letter to Plaintiff via U.S. Mail," denying Plaintiff's request "for the CART machine" because "this must be provided by the defendant."[7] Plaintiff contends that Justice of the Peace Spencer "implicitly denied" the request for an oral interpreter because he "fail[ed] to address it entirely."[8]

The eviction proceeding took place on August 14, 2018, at which time neither the CART services, nor the oral interpreter were provided.[9] Plaintiff "verbally objected" and "Justice Spencer indicated that he would write notes on a legal pad for Plaintiff's benefit."[10] "When Plaintiff expressed her objection to this arrangement, Justice Spencer laughed and stated that Plaintiff could hear him."[11] Plaintiff admits that Justice of the Peace Spencer wrote notes for Plaintiff's benefit; however, Plaintiff claims that she "failed to hear and understand a significant portion of the oral communications that were made during the hearing, which impaired her ability to effectively and fully participate in the proceeding."[12]

Plaintiff filed suit on May 10, 2019, naming as Defendants Justice of the Peace Spencer and the State of Louisiana.[13] The State of Louisiana was dismissed on September 26, 2019.[14] Plaintiff brings claims for damages due to the Defendants' alleged

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] Rec. Doc. No. 1, p. 7.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] Rec. Doc. No. 1, p. 4.
[14] Rec. Doc. No. 18.
59107

failure to provide auxiliary aids and services in order to secure effective communication under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and the Louisiana Interpreter's Law, La. R.S. § 46:2361, *et. seq.*[15] Defendant argues that he is absolutely immune from liability based on the doctrine of absolute judicial immunity and seeks dismissal under Federal Rule of Procedure 12(b)(6).

## II. LAW AND ANALYSIS

### A. Motion to Dismiss under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[16] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[17] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[18] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation

---

[15] Rec. Doc. No. 1, pp. 9-19.
[16] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[17] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011)(internal citations and quotation marks omitted).
[18] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).
59107

of the elements of a cause of action will not do."[19] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[20] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[22] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[23] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[24]

### B. Absolute Judicial Immunity

Absolute judicial immunity extends to all judicial acts which are not performed in the absence of all jurisdiction.[25] This immunity extends to all judges, irrespective of their status in the judicial hierarchy, including justices of the peace.[26] When determining whether a judge is to be afforded absolute judicial immunity, Louisiana courts often turn to the two-pronged "*Mireles* test" set forth in *Mireles v. Waco*.[27]

---

[19] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) [hereinafter *Twombly*] (internal citations and quotation marks omitted).
[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)[hereinafter *Iqbal*](internal citations omitted).
[21] *Id.*
[22] *Id.*
[23] *Taha v. William Marsh Rice Univ.*, No. 11-2060 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[24] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[25] *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).
[26] *Brewer v. Blackwell*, 692 F.2d 387, 396 (5th Cir. 1982)("[Absolute judicial immunity] extends to Justices of the Peace as well as those who sit on the Supreme Court.").
[27] 502 U.S. 9, 11-13, 112 S.Ct. 286, 288-89, 116 L.Ed.2d 9 (1991).

The first prong of the *Mireles* test prompts the Court to analyze whether the precise act complained of is a normal judicial function exercised by the judge. This question requires examination by the Court as to the "nature and function" of the judge's act, not the act itself.[28]

The second prong of the *Mireles* test provides that a judge will lose his or her right to immunity if the complained judicial act occurred in the complete absence of all jurisdiction.[29] Thus, in regard to the second prong, the Court must determine whether the judge has some subject-matter jurisdiction to do the act in question.[30] Stated another way:

> There are only two circumstances under which judicial immunity may be overcome. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.[31]

In sum, in order to determine whether Justice of the Peace Spencer is entitled to absolute judicial immunity, the Court must address two key issues: (1) whether the Defendant's action was outside of his judicial capacity (*i.e.*, was this act a normal judicial function), and (2) if so, whether his actions occurred in the complete absence of all jurisdiction thereby depriving the Defendant of absolute judicial immunity.

   1.   <u>Judicial Capacity</u>

The Fifth Circuit has adopted a four-factor test, also known as the *McAlester* factors, for determining whether a judge's actions were "judicial in nature":

---

[28] *Id.* at 288.
[29] *Id.* at 289.
[30] *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993).
[31] *Palowsky v. Campbell*, 249 So.3d 945, 955 (La.App. 1 Cir. 4/11/18)(citing *Mireles*, 502 U.S. at 11-12).
59107

(1) whether the precise act complained of is a normal judicial function;

(2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers;

(3) whether the controversy centered around a case pending before the court; and

(4) whether the acts arose directly out of a visit to the judge in his official capacity.[32]

The factors are to be construed broadly in favor of immunity.[33] It is not required that all factors of the test be met in order for the act to be considered within the judge's judicial capacity.[34]

In determining whether the complained act is a judicial function, the Supreme Court in *Forrester v. White* stated that courts should make the determination based on "the nature of the function performed, not the identity of the actor who performed it[.]"[35] Stated another way, "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity."[36] As a result, the Court is to look to the act's relation to a general function normally performed by a judge, in this case the function of providing auxiliary aids and services to secure effective communication.[37]

---

[32] *Malina*, 994 F.2d at 1124 (citing *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972)).
[33] *Id.* (citing *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985)).
[34] *Adams*, 764 F.2d at 297.
[35] 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988).
[36] *Stump*, 98 S.Ct. at 1107.
[37] *See Mireles*, 502 U.S. at 13.

Because the Court must examine the nature and/or function of the act, judicial immunity means that a judge "will not be deprived of immunity because the action he took was in error … or was in excess of his authority."[38] Additionally, a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive."[39]

Difficulties often arise when courts attempt to draw the line between judicial acts, in which case immunity is appropriate, and acts that happen to be done by judges.[40] While there exists no precise definition of the class of acts entitled to immunity, a court must draw a "distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform" in order to determine whether a judge's conduct is entitled to immunity.[41]

The Court now turns to the *McAlester* factors to determine whether Justice of the Peace Spencer's denial of Plaintiff's request for auxiliary aids and services was judicial in nature.

> *a.     Factor 1: Whether the precise act complained of is a normal judicial function*

Plaintiff argues that Justice of the Peace Spencer's failure to provide auxiliary aids and services is not a normal judicial function because it is administrative in nature.[42] Specifically, Plaintiff reasons that most "larger court systems" designate a coordinator to handle requests for accommodations, and since a justice of the peace usually does not have a person to whom to designate such a task, it equates to the justice of the peace

---

[38] *Id.* at 288 (quoting *Stump*, 435 U.S. at 356).
[39] *Forrester*, 484 U.S. at 227.
[40] *Id.*
[41] *Id.*
[42] Rec. Doc. No. 9, pp. 5-9.
59107

performing an administrative task.[43] Defendant argues that a "judge's ruling on [an] ADA accommodation [request] is a judicial function," and Justice of the Peace Spencer ruled upon Plaintiff's request for an accommodation, which was asserted in her answer, and in the course of an eviction proceeding, a judicial act.[44] The Court agrees with Defendant for the following reasons.

Viewing Plaintiff's *Complaint* in a light most favorable to her, Justice of the Peace Spencer was faced with a request for accommodations to aid the hearing of the Plaintiff at an eviction proceeding. Justice of the Peace Spencer denied this request in writing prior to the actual proceeding and advised Plaintiff that she would have to provide the aids and services that she was seeking. Plaintiff voiced an objection to the lack of auxiliary aids and services at the eviction proceeding, to which Justice of the Peace Spencer responded and attempted to assist by writing notes for Plaintiff during the proceeding. While the decision not to provide the aids and services requested by Plaintiff may not have been the desired or most helpful response, the decision itself does not strip Justice of the Peace Spencer from absolute judicial immunity.[45] The question is not whether the ruling or decision was the correct one, but whether Justice of the Peace Spencer's consideration of the request for accommodation and ruling upon same was a judicial act and/or function. Jurisprudence within the Fifth Circuit has not directly addressed this issue; however, other circuits have considered similar issues.

---

[43] Rec. Doc. No. 9, p. 8 (relying upon *Forrester*, 484 U.S. at 230).
[44] Rec. Doc. No. 7-1, p. 4 (citing *Duvall v. Cty. of Kitsap*, 260 F.3d 1124 (9th Cir. 2001); *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005); and *Phiffer v. Shirtcliff*, 2011 WL 2314153 (D. Or. Apr. 14, 2011)).
[45] *Stump*, 435 U.S. at 356 ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority…."); *see also, Schmidt v. Degen*, 376 F.Supp. 664 (E.D. Pa. 1974)(Even if the decision of a justice of the peace lacked a valid procedural basis and the plaintiff was put to unnecessary inconvenience and humiliation, the doctrine of judicial immunity insulated the justice from liability for damages.).
59107

Defendant directed the Court to *Duvall v. Kitsap*[46] from the Ninth Circuit Court of Appeals, and it is directly on point. In *Duvall*, a hearing-impaired litigant sued a state court judge, among others, for failing to provide the requested accommodations to aid the plaintiff in hearing and effectively communicating and participating during a marriage dissolution proceeding. The plaintiff made numerous requests for auxiliary aids and services prior to the actual proceeding. These requests were fielded by the designated ADA administrator with the court. When the date of the proceeding arrived, the plaintiff's counsel made a formal motion for auxiliary aids. The judge denied the motion, stating that the court had not "progressed" to the "technical degree" to provide the type of aids and services specifically requested. The judge concluded by stating that, "I can only assume that if [the plaintiff] wished to have that service available he can provide that service for himself."[47] The Ninth Circuit concluded that the judge was acting in a judicial capacity when he refused to accommodate the plaintiff, stating that "[r]uling on a motion is a normal judicial function, as is exercising control over the courtroom while court is in session. [The judge] is therefore entitled to absolute judicial immunity."[48]

The same holds true for the matter presently before this Court. Justice of the Peace Spencer ruled on what were essentially two Motions for relief urged by the Plaintiff within the context of judicial proceedings. The Plaintiff's moved for accommodations twice – once in writing pre-hearing and again in open court. Justice of the Peace Spencer denied the Plaintiff's pre-trial request (ie. Motion) in writing prior to the eviction proceeding and again denied the Plaintiff's re-urged Motion in orally open Court. This Court finds that

---

[46] 260 F.3d 1124 (9th Cir. 2001).
[47] *Duvall*, 260 F.3d at 1131.
[48] *Duvall*, 260 F.3d at 1133.
59107

Justice of the Peace Spencer's rulings on motions and objections which arose in connection with an adversarial eviction proceeding are judicial functions.

Similarly, the Eleventh Circuit Court of Appeals found that absolute judicial immunity applied to a judge when a hearing-impaired individual made a written request for an interpreter in advance of a hearing for which he had recently been noticed to appear. A sign language interpreter was provided at the hearing; however, the plaintiff did not know sign language. The court did not have the aids and services that he required and requested and simply instructed everyone in the courtroom to speak more loudly than usual.[49]

In *Sinapi v. Rhode Island Board of Bar Examiners*,[50] the plaintiff filed suit against the Rhode Island Board of Bar Examiners ("the Board") because it repeatedly denied his requests for special accommodations in order to facilitate his taking of the bar examination. He suffered from attention deficit/hyperactivity disorder and anxiety, and he sought additional time to take the exam and a testing environment with limited distractions.[51] In considering the plaintiff's appeal, the First Circuit considered whether a "quasi-judicial immunity" applied to the Board in its denial of the plaintiff's request for accommodations. The court explained that the role of the Board, in considering a request for accommodation, is "functionally comparable to that of a judge."[52] The Board "weighed the facts relating to the request for accommodations, albeit in a manner disappointing to [the plaintiff], and resolved the dispute about his entitlement to the accommodations on

---

[49] *Badillo*, 158 F. App'x at 210.
[50] 910 F.3d 544 (1st Cir. 2018).
[51] *Id.* at 547.
[52] *Id.* at 555.
59107

its merits."[53] The court also found that "the act of denying a bar applicant an accommodation is likely to stimulate a litigious reaction by the disappointed applicant;" therefore, the need for "quasi-judicial protection of the Board" was "painfully obvious."[54] The *Sinapi* court applied a three-factor analysis, similar to the four-factor *McAlester* test applied in the present matter, to conclude that the "quasi-judicial" body, the Board, conducted a judicial function when considering and denying a request for accommodation.[55]

Similarly, in this case, Justice of the Peace Spencer considered Plaintiff's request for accommodation and ruled in writing. He again considered a renewed request for accommodation and objection to his prior written in open court. Similar to *Sinapi*, Plaintiff was disappointed in the decision, even inconvenienced and possibly prejudiced; however, the disappointment does not strip the immunity. The Court notes that a party's meaningful ability to fully participate in the judicial process is fundamental to due process and implicates a citizen's rightful access to justice. Nonetheless, the Court is constrained by the doctrine of absolute judicial immunity and the breadth it has been afforded by jurisprudence.[56]

---

[53] *Id.*
[54] *Id.*
[55] *Id.* at 554-55. *See also, Perkins v. United States Fidelity & Guaranty Co.*, 433 F.2d 1303 (5th Cir. 1970)(where the Fifth Circuit rejected the argument that a probate judge's responsibility of deciding whether a person should be committed to a state mental institution was a "ministerial" function not belonging to the judiciary).
[56] Actions of a less judicious character than that of Justice of the Peace Spencer have found protection in absolute judicial immunity. *See, Mireles v. Waco*, (absolute judicial immunity extended to a state court judge who directed police officers to locate an attorney in the courthouse and use "excessive force" to bring him before the judge.) *Carter v. Rupracht*, (where a justice of the peace admitted perjured testimony, witnesses were not placed under oath, applicable law was not applied, and the plaintiff was denied a new hearing; "[I]t seems obvious that the acts of the [justice of the peace] during the hearing were judicial in nature and that the defendant is entitled to absolute immunity for all of the alleged conduct during the hearing."); *Martin v. Bicking*, (where the judge jailed the plaintiff for 28 days after a two minute hearing with no opportunity to defend himself and he was not the individual involved in the charged crimes, a false arrest; 59107

The Court concludes that the first *McAlester* factor has been met.[57]

> b. *Factor 2: Whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers.*

Justice of the Peace Spencer's response to Plaintiff's request for accommodations took place first in writing and a second time in Justice of the Peace Spencer's courtroom in the course of the noticed eviction proceeding. Written reasons for ruling as well as oral rulings made in the course of a proceeding in court are judicial acts that fall within the scope of judicial immunity.[58] Additionally, Justice of the Peace Spencer's acts are not alleged to have been performed in inappropriate places. No allegations in the complaint suggest that Defendant's written response to the request and oral ruling in the courtroom were not appropriate "adjunct spaces." Further, Plaintiff admits that the second factor is a "close call."[59]

Because the factors must be construed broadly in favor of immunity, the Court finds that the second *McAlester* factor is met.[60]

---

judicial immunity applied); *Wells v. Ali*, (a justice of the peace's actions in ordering a tenant evicted, holding money related to the eviction proceeding, slamming shut the door to the judge's chambers, and hurling a racist epithet at the tenant were official actions entitling the justice of the peace to judicial immunity).
[57] *See, Bourg v. Fabre*, No. 16-7490, 2016 WL 6563425, *2 (E.D. La. Nov. 4, 2016)("An eviction proceeding and the judgment arising from that proceeding are normal judicial functions" of a justice of the peace.).
[58] *Hammond v. Plattsmier*, No. 08-259, 2008 WL 1766678, *2 (W.D. La. Apr. 17, 2008)("Judge Jeansonne's rulings (as well as his written and oral reasons therefor) are wholly judicial acts….").
[59] Rec. Doc. No. 9, p. 9.
[60] *Bourg*, 2016 WL 6563425, at *2 ("An eviction proceeding and the judgment arising from that proceeding are normal judicial functions. Plaintiff has presented no evidence that these functions occurred outside the courtroom or appropriate adjunct spaces. Additionally, the complaint centers around the eviction proceeding that was before [the defendant], and these acts arose directly out of a visit to [the defendant] in his official capacity. Accordingly, [the defendant's] actions in this case were judicial.").
59107

> c. *Factor 3: Whether the controversy centered around a case pending before the court.*

The actions complained of, ruling upon a request for accommodation in conjunction with an eviction proceeding, arose out of the notice of and conducting the eviction proceeding, a matter pending before Justice of the Peace Spencer. All actions taken by Justice of the Peace Spencer were in his official capacity.[61] The third *McAlester* factor is met.

> d. *Factor 4: Whether the acts arose directly out of a visit to the judge in his official capacity.*

As touched upon in addressing the second factor, Defendant's actions included two parts: (1) a written response to Plaintiff's written request for accommodation; and (2) a verbal response to Plaintiff's objection at the eviction proceeding in court. While the first act did not directly arise out of a visit to the judge, it did arise out of a notice of a court hearing that was to take place in one week. The second act most certainly arose out of a visit in court with Justice of the Peace Spencer. As with the second factor, Plaintiff admits that the fourth factor is a "close call."[62] The fourth factor is met for the same reasons as those stated above concerning the second factor.

> e. *Summary of McAlester Factors*

Although the Court finds that all four factors have been met, it is noted that it is not required that all factors of the test be met in order to afford a judge judicial immunity.[63] For those "close calls," even if one were to find that the factors were not met, the result

---

[61] *Id.*
[62] Rec. Doc. No. 9, p. 9.
[63] *Adams*, 764 F.2d at 297.
59107

would remain the same. With consideration of all of the above, the Court finds that Justice of the Peace Spencer's alleged failure to provide auxiliary aids and services was and is a normal judicial function. Therefore, absolute judicial immunity attaches unless Justice of the Peace Spencer acted in clear absence of all jurisdiction.

### 2. Clear Absence of All Jurisdiction

The second prong of the *Mireles* test states that, although a judge's actions may be "judicial in nature," a judge will not be granted judicial immunity if his judicial act occurred in the complete absence of all jurisdiction. If a court has any subject matter jurisdiction over a matter, sufficient jurisdiction will exist for purposes of judicial immunity.[64]

Significantly, the Court notes that Plaintiff did not allege in her *Complaint* that Justice of the Peace Spencer lacked jurisdiction.[65] Furthermore, Plaintiff failed to address the "absence of all jurisdiction" step in the absolute judicial immunity analysis in her opposition.[66] Nonetheless because the Plaintiff proceeds pro se and because this element addresses jurisdiction, the Court makes the analysis.

The doctrine of absolute judicial immunity is "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself."[67] Again, to deprive a judge of his or her entitlement to absolute judicial immunity from liability, a plaintiff must prove that the

---

[64] *Malina*, 994 F.2d at 1125.
[65] Rec. Doc. No. 1.
[66] Rec. Doc. No. 9.
[67] *Bradley v. Fisher*, 80 U.S. 335, 347, 13 Wall. 335, 347, 20 L.Ed. 646 (1871).
59107

judge's act meets an extremely high standard, in that the judge, in exercising the alleged wrongful act, acted in "clear absence of all jurisdiction."

The burden is difficult to overcome even in the most egregious cases, as evidenced in the Supreme Court's opinion in *Stump v. Sparkman*.[68] The relevant facts are as follows: A mother filed a petition in an Indiana Circuit Court for the court's authority to have her "somewhat retarded" 15-year-old, minor daughter sterilized.[69] The circuit judge, Judge Stump, approved the petition in an *ex parte* proceeding without a hearing and without notice to the minor.[70] Shortly after, telling the minor that she was to have her appendix removed, the operation was performed.[71] Two years later, after marrying and finding she was unable to conceive, the plaintiff learned of the sterilization and filed suit against several defendants, including Judge Stump.[72] The Court of Appeals, overruling the District Court, found that Judge Stump was not entitled to absolute judicial immunity because he did not have jurisdiction over the petition authorizing the plaintiff's sterilization.[73] The Supreme Court of the United States granted certiorari and reversed.[74]

The Supreme Court stated that Judge Stump did not act in "clear absence of all jurisdiction" in approving the mother's petition and, therefore, was not deprived of absolute judicial immunity.[75] The Court of Appeals found that the Judge's actions could not be supported, relying on an Indiana Court of Appeal's intervening decision that held

---

[68] 435 U.S. 349 (1978).
[69] *Id.* at 349.
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Id.* at 357.
[74] *Id.* at 355.
[75] *Id.* at 357.
59107

that a parent does not have a common-law right to have a minor child sterilized.[76] The Supreme Court rejected this argument, reasoning that while the opinion presented by the Court of Appeals limits the rights of parents to sterilize their children, it does not question nor limit the jurisdiction of a circuit court judge.[77] Therefore, a judge would err as a matter of law if he or she were to approve a petition seeking sterilization, but the opinion does not indicate that a judge is without jurisdiction to entertain such a petition.[78]

The question now becomes whether Justice of the Peace Spencer's conduct of denying a request for auxiliary aids was in complete and clear absence of all jurisdiction.[79] Thus, the Court must determine whether Justice of the Peace Spencer has some subject-matter jurisdiction to rule upon requests for accommodation for auxiliary aids and services in conjunction with an eviction proceeding noticed to take place in his court.[80]

"A justice of the peace court shall have jurisdiction concurrent with the district court over suits by … lessors for the eviction of … tenants of leased … premises…."[81] Any rulings during the course of the hearing of a matter are judicial functions, rendering the judicial actor absolutely immune from liability.[82]

---

[76] *Id.* at 358.
[77] *Id.* at 359.
[78] *Id.*
[79] *Id.* at 357.
[80] *Id.* at 356.
[81] *Gilbert v. Waller*, 39,654 (La.App. 2 Cir. 6/16/05); 907 So.2d 175, 178 (citing LSA-C.C.P. art. 4912); ("[A] Justice of the Peace is governed by the same constitutions and laws that govern all courts and judges of this state, and is bound to apply the law as written by the legislature and construed by the various courts." *In re Justice of Peace Franklin*, 07-1425 (La. 11/27/07); 969 So.2d 591, 600 (citing *In re: Justice of the Peace Alfonso*, 07-0120, p. 7 (La. 5/22/07), 957 So.2d 121, 125; *In re Justice of Peace Cook*, 05-0783, p. 5 (La. 6/29/05), 906 So.2d 420, 424.
[82] *See Stewart v. Crim. Dist. Ct. of L.A.*, No. 08-3731, 2008 WL 4758610, *2 (E.D. La. Oct. 30, 2008); *Knight v. 24th Jud. Dist. Ct. Section A*, No. 06-4537, 2006 WL 4017837, *2 (E.D. La. Oct. 17, 2006); *Blaney v. Meyers*, No. 08-1869, 2009 WL 400092, *2 (N.D. Tex. Feb. 17, 2009)(citing *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994); *Mays v. Sudderth,* 97 F.3d 107, 110 (5th Cir. 1996); *Krueger v. Reimer*, 66 F.3d 75, 76-77 (5th Cir. 1995)("[P]re-trial and trial rulings … were done in their capacities and functions as judges.
59107

In conclusion, because Justice of the Peace Spencer's actions were within his judicial capacity as Justice of the Peace and because he did not exercise this function in the clear absence of all jurisdiction, he is entitled to absolute judicial immunity. Defendant Spencer's motion will be granted, and Plaintiff's claims will be dismissed.

### C. Prospective or Injunctive Relief and Attorney's Fees

Plaintiff specifically seeks declaratory and injunctive relief under Title II of the ADA,[83] Section 504 of the Rehabilitation Act,[84] and the Louisiana Interpreter's Law[85] in her *Complaint*. Plaintiff argues that absolute judicial immunity does not extend to claims of prospective or injunctive relief and attorney's fees.[86] In making this argument, Plaintiff attempts to extend cases where judges were not absolutely immune from suits for prospective injunctive relief under Section 1983 to Plaintiff's claims under the ADA, the Rehabilitation Act, and Louisiana Interpreter's Law. Plaintiff points to one case from the Fourth Circuit where this application was made in a suit against a judge under the ADA.[87]

This Court is not bound by the Fourth Circuit Court of Appeals and does not choose to follow the *Livingston* decision. The Fifth Circuit, by which this Court is bound, has affirmed the application of absolute judicial immunity to judges without any distinction of relief sought.[88] In fact, in *Ballard v. Wall*, the plaintiff sought monetary, prospective or

---

'Judicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial discretion.'").
[83] Rec. Doc. No. 1, p. 13.
[84] Rec. Doc. No. 1, p. 17.
[85] Rec. Doc. No. 1, p. 19.
[86] Rec. Doc. No. 9, pp. 2-3.
[87] *Livingston v. Guice*, No. 94-1915, 1995 WL 610355, at *3-5 (4th Cir. 1995).
[88] *See, e.g., Ballard v. Wall*, 413 F.3d 510 (5th Cir. 2005)(affirming the granting of a motion to dismiss based on the application of absolute judicial immunity on appeal from the United States District Court for the Middle District of Louisiana, the late Judge Brady presiding).
59107

injunctive relief, as well as attorney's fees, just as Plaintiff pleads here.[89] This Court granted the judicial defendant's motion to dismiss based on the attachment of absolute judicial immunity and dismissed the plaintiff's claims, without any distinction of relief sought. The Fifth Circuit re-iterated on appeal that "[j]udicial immunity is an immunity from suit and not just from the ultimate assessment of damages."[90] This Court agrees and follows the Fifth Circuit's direction as it is bound to do.

## III. CONCLUSION

For the reasons set forth above, the *Motion to Dismiss*[91] by Defendant, Justice of the Peace Larry Spencer, is **GRANTED,** and Plaintiff, Donna Laird's, claims are dismissed with prejudice.

**IT IS SO ORDERED.**

*Judgment* will be entered accordingly.

Signed in Baton Rouge, Louisiana on March 6, 2020.

*[signature]*

**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[89] *Id.* at 514.
[90] *Id.* at 515 (citing *Mireles*, 502 U.S. at 11).
[91] Rec. Doc. No. 7.

59107